Harry KETZLER, Appellant,

v.

STATE of Alaska, Appellee.

Patrick MITCHELL, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 5069, 5118.

Court of Appeals of Alaska.

Oct. 8, 1981.

Jane Kauvar, Asst. Public Defender, Mary E. Greene, Asst. Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellants.

Mark I. Wood, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Harry Ketzler and Patrick Mitchell were convicted in separate trials of operating motor vehicles while under the influence of intoxicating liquor (OMVI) in violation of AS 28.35.030. They appealed their convictions to the superior court where the convictions were affirmed and renew their appeals in this court. Their sole contentions on appeal relate to the manner in which their juries were selected on April 6, 1979. Since the jury selection procedure was identical in both cases, we will address all of their contentions in this single opinion.

On March 21, 1979, James R. Blair, Presiding Judge in the Fourth Judicial District, sent a letter to fifteen lawyers who appeared upon the records of the court as representing separate individuals whose OMVI trials were scheduled for the week of April 9 to 13, 1979. In his letter he advised counsel that he was consolidating all of the cases together solely for purposes of jury selection to be held at 9:00 a. m. on April 6, 1979, and he indicated that he would be conducting the jury *voir dire* but that counsel could submit questions in writing no later than April 4, 1979, which, if appropriate, would be asked. Among the fifteen cases scheduled for trial were those of Ketzler and Mitchell. At the time set for jury selection, Judge Blair met with counsel for all of the parties out of the presence of the jury panel, discussed the procedures to be followed, and allowed counsel to interpose objections. Judge Blair indicated that he would call all of the jury panel into the courtroom, ask the panel as a whole certain qualifying questions, and once the jury was

qualified he would then *voir dire* the panel as a whole, putting to the panel such additional questions as had been submitted in writing in accordance with his prior letter. (Apparently, only Ms. Jane Kauvar, an attorney with the Public Defender Agency, submitted written questions). Upon completion of *voir dire*, thirteen jurors would randomly be selected and seated in the jury box. The cases would be ranked and each jury would be selected in turn. Judge Blair substituted a "striking" system whereby the attorney for each side would strike three potential jurors for a total of six, reducing the thirteen to seven for the customary method of jury selection. The defense would then be permitted to select one of the seven as alternate and the jury would be impaneled for that case. Another thirteen would be randomly selected, which could include some of the jurors previously selected, and the same procedure would be followed until a jury had been selected for each of the pending cases. Once jury selection was completed the jurors would be told when to report for their case and dismissed. Thus, during this single procedure Judge Blair selected juries for each of the fifteen cases to be tried during the week. Judge Blair informed counsel and the jury panel that he would not be trying the cases and that, rather, district judges would preside at each trial. He further informed counsel that they could discuss with the trial judge possible further *voir dire* of the jurors to determine any bias or prejudice that might have arisen between the initial selection and the time for trial and that an opportunity to challenge any juror for cause would be provided at that time.

Both Ketzler and Mitchell were tried by Judge Connelly—Ketzler on April 11 and Mitchell on April 12. In both cases Judge Connelly conducted further *voir dire* and gave counsel the opportunity to query the jury as well. Both Ketzler's counsel and Mitchell's counsel asked the jurors if any event had occurred since initial selection which might influence their verdict. No one responded affirmatively. Counsel were

also permitted to ask the jurors questions about the unusual jury selection procedure utilized the preceding Friday. The record reflects that the Ketzler jurors had not previously sat on an OMVI case prior to trying him while four of the Mitchell jurors had sat on the Ketzler case.

Ketzler and Mitchell raise four points on appeal. First, that Judge Blair lacked authority as presiding judge to appoint himself as a district judge for purposes of conducting jury selection. Second, that the mass jury selection procedure which was utilized denied appellants due process of law. Third, that substituting Judge Connelly for Judge Blair after the jury was chosen but prior to trial constituted prejudicial error. Fourth, that utilizing one jury selection procedure for OMVI cases and another for all other cases operated to deprive appellants of the equal protection of the law in violation of the state and federal constitutions. We have carefully reviewed the record of this case and the arguments of counsel and have concluded that the superior court did not err in affirming the judgment of the district court in each case. We will discuss appellants' contentions in order.

## THE PRESIDING JUDGE'S DECISION TO SELECT JURIES FOR THE DISTRICT COURT

■ Appellants rely on art. 4, § 16 of the Alaska State Constitution which provides as follows:

The chief justice of the supreme court shall be the administrative head of all the courts. He may assign judges from one court or division thereof to another for temporary service. The chief justice shall, with the approval of the supreme court, appoint an administrative director to serve at the pleasure of the supreme court and to supervise the adminstrative operations of the judicial system.

Appellants contend that only the chief justice can assign a superior court judge to preside over district court matters, including the selection of a jury for a district court case. We disagree. There is nothing in the constitutional provision just cited establishing an exclusive procedure for assignments of judges within and between courts. AS 22.10.130 provides in relevant part:

The presiding judge shall in addition to his regular judicial duties (1) assign the cases pending to the judges made available within the district . . . .

The supreme court has implemented this statute by adopting administrative rules. Administrative authority over both the superior and the district courts was consolidated in a single presiding judge after a thorough study of the matter in 1974. *See,* Supreme Court Order No. 183 cited in *Jimmie et al. v. Alaska Village Electric Co-Op, Inc.,* 624 P.2d 1258 (Alaska 1981). Former Alaska Rule of Administrative Procedure 37(a) provided in pertinent part, until amended in July 1980:

The presiding judge shall perform the duties required of him by law and shall be responsible for supervising the administration of all court units within his district.

Finally, the legislature has given the presiding judge the authority to appoint acting district judges to serve at his pleasure where needed. AS 22.15.170(b). From the foregoing we conclude that the presiding judge of the integrated courts within a district, where in his opinion efficiency in the administration of justice would be advanced, may take charge of jury selection personally in the district courts. Naturally, the jury selection procedure is important and must be conducted within constitutional guidelines, but the propriety of the procedures chosen will be discussed hereafter. Suffice it to say that the presiding judge had jurisdiction to act as he did.

■ Assuming arguendo that the presiding judge lacked authority to appoint himself as a district judge, we would conclude that such appointment was unnecessary to perform the functions questioned herein. The superior court is the court of general jurisdiction, having original jurisdiction over all civil and criminal matters arising under the laws of the State of Alaska. *See*

AS 22.10.020. The district court, on the other hand, is a court of limited jurisdiction. *See, e. g.,* AS 22.15.060(a). Insofar as the criminal jurisdiction of the district courts and the superior courts is the same, such jurisdiction is concurrent. AS 22.15.060(b); *see Theodore v. State,* 407 P.2d 182 (Alaska 1965), *cert. denied,* 384 U.S. 951, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966). Thus, the presiding judge can assign district court matters to superior court judges without assigning the superior court judge to the district court. Therefore, by virtue of his appointment to the superior court, Judge Blair had jurisdiction to choose juries in district court cases assigned to him. We find no error in his doing so.

## SUBSTITUTION OF JUDGES AFTER THE JURY WAS SWORN

■ Appellants complain of Judge Blair's decision to turn the cases over to district court judges following his selection of the juries. They find no authority condemning this practice and the cases we have found are uniformly contrary to their position. *See* cases collected in Annot. 83 A.L.R.2d 1032, 1034–35 (1962) and ABA Standards For Criminal Justice, Trial By Jury, § 15–3.3, (2nd ed. 1980), the commentary to which states, at 89:

> When substitution occurs after selection of the jury but before any evidence is introduced, courts have taken the view that there is no problem because one judge has heard all of the evidence.

We find no error in the substitution of judges.

## DUE PROCESS OF LAW

■ Appellants argue that the jury selection process utilized, *i. e.* a striking system similar to that in vogue in the southwestern United States, failed to comply with Alaska Criminal Rule 24(d) and (e).[1] Rule 24 provides in relevant part,

> (d) *Peremptory Challenges.* After all challenges for cause are completed, the

parties shall make or waive their peremptory challenges. First the plaintiff and then the defendant may exercise one or more peremptory challenges alternately until each party successively waives further peremptory challenges or all such challenges have been exercised .... A juror peremptorily challenged is excused without cause ....

> (e) *Replacement of Challenged Jurors.* After a challenge for cause is sustained or a peremptory challenge exercised, another juror shall be selected and examined before further challenges are made. Such jurors shall be subject to challenge as are other jurors.

While it is clear that the trial court did not follow this rule in selecting juries in this case, we do not consider that failure to constitute deprivation of due process of law. Criminal Rule 24 is subject to Rule 53 which provides,

> These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

Certainly Rule 53 should be sparingly used and the court should not vary the procedures set out in Criminal Rule 24 except for good cause. Here, however, the trial court was faced with a substantial number of district court cases to be tried within a single week. Given the imperative of Criminal Rule 45 requiring speedy trials, we do not consider the trial court to have acted unreasonably in streamlining the jury selection procedure in the manner that it did. If anything, the striking procedure chosen by the trial court gave the parties greater control over jury selection than would have the procedure set out in Rule 24. In the absence of some showing of prejudice, and there is none, we find that the trial court did not abuse its discretion under Criminal Rule 53 in relaxing Rule 24(d) and (e) in the manner that it did.

---

1. In addition, appellants argue that by singling out OMVI cases for special procedures, the court intimated to the jury panel that such cases were entitled to less consideration than those involving other crimes. We find no such intimation in the record.

Next, Ketzler and Mitchell charge that they were deprived of due process because some of the jurors that sat on their cases had previously sat on other OMVI cases. While both appellants make this claim, it appears that no one on Ketzler's jury had previously served, at least during the preceding week. In Mitchell's case, four of the jurors had previously sat on the Ketzler jury. Generally, a juror is not disqualified for cause by virtue of having sat previously on a jury trying a different defendant for a like offense. *See, e. g., United States v. Carranza*, 583 F.2d 25 (1st Cir. 1978); Annot. 160 A.L.R. 753, 762–66 (1946). This is particularly true where, as here, defense counsel challenged no jurors for cause by virtue of interim service. *See, e. g., United States v. Williams*, 484 F.2d 176, 178 (8th Cir. 1973), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Mitchell's reliance on *United States v. Price*, 573 F.2d 356 (5th Cir. 1978) and *United States v. Mutchler*, 559 F.2d 955 (5th Cir. 1977), *modified*, 566 F.2d 1044 (5th Cir. 1978) appears misplaced. In those cases, the court found error in the trial courts' failure to permit additional *voir dire* regarding interim jury service by the defendants. Here Judge Connelly conducted such *voir dire* and permitted counsel to supplement his questioning. No challenges for cause were interposed. Consequently, we agree with the superior court that Mitchell has waived this objection.

Mitchell argues, nevertheless, that his ability to intelligently peremptorily challenge was compromised by the interim service of four jurors making his early peremptories meaningless. We recognize that the jury selection process took place six days prior to Mitchell's trial. While additional *voir dire* was permitted, the court did not expressly grant additional peremptory challenges and Rule 24 does not expressly authorize such under these circumstances. Nevertheless, case law makes it clear that additional peremptory challenges are available under Alaska practice where good cause can be shown for their allowance. *See, e. g. Malvo v. J.C. Penney Co., Inc.*, 512 P.2d 575, 588 (Alaska 1973) (Rabinowitz,

Chief Justice, concurring). Here Mitchell did not seek additional peremptory challenges from Judge Connelly, the trial judge. Nor did he alert the trial judge to any concerns he might have had about his peremptory challenges. Nor is there anything in the proceedings before the presiding judge or the trial judge which would compel the conclusion that such a request would have been fruitless. Under these circumstances, we believe Mitchell has waived any objection that his right to peremptorily challenge was unconstitutionally diluted.

## EQUAL PROTECTION

Defendants argue that utilizing a striking system instead of a peremptory challenge system only for fifteen OMVI cases violated the equal protection clauses of the federal and state constitutions. United States Const. amend. XIV, § 1; Alaska Const. art. 1, § 1.

Alaska's criminal and civil rules are respectively based upon the federal criminal and civil rules of procedure with certain modifications. Among the modifications is Alaska Criminal Rule 53, previously mentioned, which authorizes the trial court to modify the rules in the interest of justice.

In evaluating a claim that a particular procedure denies a party the equal protection of the laws, the supreme court in *State v. Erickson,*, 574 P.2d 1, 11 (Alaska 1978), quoting *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976), established the following test,

> The classification "must be reasonable, not arbitrary, and must rest upon some difference *having a fair and substantial relationship to the object of the legislation,* so that all persons similarly circumstanced shall be treated alike." (citation omitted; emphasis added)

In the instant case, the presiding judge was faced with an unusually large number of cases to be tried within a single week. Assuming, based upon experience, that the jury selection procedure unduly increased the time required to try cases, he established the procedures criticized here to alleviate the problem.

Although consolidated *voir dire* would undoubtedly have been possible to use in other categories of offenses, we believe that the application of this technique to OMVI cases was particularly appropriate, given the strong similarity of factual, legal, and evidentiary issues commonly found in OMVI cases. It is logical to assume that the conservation of time and judicial resources resulting from the use of consolidated *voir dire* would be maximized when the technique is applied to a class of offenses sharing the close similarity typical of OMVI cases. Here, appellants have made no showing that there existed any other category of cases pending in the district court in Fairbanks as to which consolidated *voir dire* could have been applied with a comparable level of effectiveness. Under the circumstances, we conclude that Judge Blair's decision to treat these fifteen cases differently was reasonable and not arbitrary, that the means he chose were reasonably related to the end he sought, and that consequently, no equal protection violation occurred.

For the foregoing reasons, the judgment of the superior court affirming the decisions of the district court in the Ketzler and Mitchell cases is AFFIRMED.