**Dewell Wayne PEARCE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5915.**

Court of Appeals of Alaska.

Jan. 9, 1998.

Michael D. Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Cynthia L. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER, J. and JOANNIDES, District Court Judge.*

*OPINION*

MANNHEIMER, Judge.

This case presents an unusual issue that arose during jury selection. The selection process was complete, in the sense that the parties had waived their remaining peremptory challenges and had accepted a panel of twelve jurors, but the court adjourned for the evening without requiring the twelve selected jurors to take their trial oath. During this evening adjournment, the defense attorney received new information about one of the jurors. Based on this information, the attorney wished to challenge the juror in question. For this purpose, he asked the trial judge to allow him to exercise one of the remaining peremptory challenges that he had waived the day before.

The trial judge refused to allow this. For the reasons explained below, we conclude that the judge should have granted the de-

---

\* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

fense attorney's request. We therefore reverse the defendant's conviction and remand this case for a new trial.

Dewell Wayne Pearce was being tried for attempted kidnapping, third-degree assault, and third-degree misconduct involving weapons (felon in possession of a concealable firearm). AS 11.41.300(a)(1)(C), AS 11.41.220(a)(1)(A); AS 11.61.200(a)(1). Jury selection lasted throughout the first day of trial. During the selection process, Superior Court Judge Glen C. Anderson addressed several questions to the prospective jurors as a group. Some of these questions involved the jurors' feelings about the kind of charges that would be litigated at Pearce's trial. Specifically, Judge Anderson asked the prospective jurors to indicate if they or a member of their immediate family had "been the victim of a crime, particularly one similar to the kind that is alleged in the complaint—kidnapping, attempted kidnapping, or assault". A little later, the judge asked the prospective jurors if they felt any prejudice against Pearce, or believed they would have difficulty being impartial, based on the nature of the allegations against him.

By the end of the day, voir dire was complete. The parties indicated that they would not exercise their remaining peremptory challenges and would accept the twelve people seated in the jury box. Due to the lateness of the hour, Judge Anderson chose to delay administering the trial oath to the jurors; instead, he released the jurors, unsworn, for the night.

Later that evening, Pearce's attorney received an anonymous telephone call. The caller told the defense attorney that a woman juror had not been "completely honest" during voir dire; in particular, this woman juror had expressed strong feelings about assaults. According to the caller (as related by the defense attorney), the woman juror declared that she had been able to conceal her feelings about assaults because the voir dire questions had not been specific enough to force her to reveal this information.

When the parties appeared in court the next morning, Pearce's attorney informed Judge Anderson of this telephone call. The woman juror in question was identified as D.C.. Judge Anderson called D.C. into court for additional voir dire.

During D.C.'s initial voir dire (the day before), D.C. had told Judge Anderson that her answer was "no" to the questions the judge had posed as to whether she or a family member had been the victim of a crime, and as to whether she would have difficulty being impartial in a trial involving attempted kidnapping and assault. Now, when D.C. was questioned by Pearce's attorney, she gave the following answers:

DEFENSE COUNSEL: Have you ever been assaulted?

D.C.: No. Well,—

DEFENSE COUNSEL: Has anyone in your family ever been assaulted?

D.C.: No.

DEFENSE COUNSEL: Okay.... You said "well". What does that mean? Does that mean that something did occur?

D.C.: An incident when I was very, very young, but I ... guess I—I would not classify that as an assault.

DEFENSE COUNSEL: Okay. When you were a child. Can you go on—can you explain that further?

D.C.: I was molested when I was—was a youngster.

DEFENSE ATTORNEY: Okay.

D.C.: But not violently.... More coerc[ion] than violence.

D.C. then described the incident:

I was maybe 11[or] 12 years old, and [I] was molested by the parent of the children I was baby-sitting for. It was a one-time deal; it was never reported; and I just [made sure] to not further associate with that family.

D.C. declared that she had not been violently assaulted or physically coerced; rather, she had been "talked into it". D.C. again assured the court and the attorneys that she could be impartial, and she denied that she had said anything to the contrary to anyone else.

Following this additional voir dire of D.C., Pearce's attorney asked Judge Anderson to allow him to peremptorily challenge D.C..

The defense attorney told the judge that he would have challenged D.C. if this information had been revealed during the original voir dire. The State opposed the defense request, arguing that D.C.'s prior experience of sexual abuse would not impair her ability to act impartially as a juror in Pearce's trial.

Judge Anderson denied the defense request to re-open peremptory challenges. The judge concluded that D.C. had answered the previous day's questions truthfully—that none of the questions posed to D.C. the day before had necessarily required her to reveal the sexual abuse she experienced as a child. The judge based this conclusion on the fact that D.C. had been asked to reveal only "similar" crimes and "information [the parties] should be concerned with". The judge found that D.C. could have answered such questions in good faith without revealing her experience of sexual abuse. The judge therefore held the defense attorney to his previous decision to waive his remaining peremptory challenges. A few minutes later, the twelve jurors took the trial oath, and presentation of the case began.

█ A trial judge has considerable discretion in deciding what to do when problems arise during jury selection. For example, the judge has discretion to grant or deny a request for additional peremptory challenges. *Graybill v. State*, 672 P.2d 138, 139 n. 1 (Alaska App.1983), *rev'd on other grounds*, 695 P.2d 725 (Alaska 1985); *Ketzler v. State*, 634 P.2d 561, 566 (Alaska App.1981). The decision confronting Judge Anderson in this case—whether to allow an attorney to retract a previous waiver of their remaining peremptory challenges—is similarly entrusted to the judge's discretion. On appeal, we are obliged to defer to that discretion. However, under the facts of this case, we conclude that Judge Anderson should have granted the defense attorney's request to re-open peremptory challenges (so that the defense attorney could use one of his remaining challenges against juror D.C.).

█ Peremptory challenges must be exercised in a timely manner or they are waived. In Pearce's case, the defense attorney announced that he did not intend to exercise any of his remaining peremptory challenges against the twelve selected jurors. Under Alaska Criminal Rule 24(d), the attorney's decision constituted a waiver of his right to peremptorily challenge those jurors.

█ However, the Alaska Supreme Court has stated that the door truly closes on peremptory challenges when the jurors are sworn. *Grimes v. Haslett*, 641 P.2d 813, 816 (Alaska 1982). In Pearce's case, Judge Anderson did not require the jurors to take the trial oath at the end of the day of jury selection; instead, he put this off until the following day. The jurors were still unsworn the following morning when the defense attorney unsuccessfully sought to peremptorily challenge juror D.C.. We thus conclude that Judge Anderson retained the discretion to release the defense attorney from his waiver of peremptory challenges if there was good cause for doing so.

█ It is true that the defense attorney had previously announced himself satisfied with D.C. and the other eleven jurors. However, in light of D.C.'s answers during the next morning's voir dire, there was good reason to allow the defense attorney to re-evaluate that decision. Even though Judge Anderson found that D.C. had not lied during voir dire, the record demonstrates a strong possibility that D.C. had purposely shaded her answers to avoid revealing information about her background—information that she knew, or reasonably should have known, was pertinent to the voir dire inquiry and would be considered important by the lawyers.

D.C.'s answers were sufficient to raise a significant doubt concerning her ability to be fair. This doubt was perhaps not sufficient to establish legal cause for D.C.'s removal, but it was sufficient to demonstrate that the defense attorney was acting in good faith, and for good cause, when he sought to exercise his previously-waived peremptory challenge. We note, moreover, that granting the peremptory challenge would not have disrupted or delayed Pearce's trial, since an alternate juror was available to take D.C.'s place.

For these reasons, we conclude that the trial judge abused his discretion when he

denied the defense attorney's request to exercise a belated peremptory challenge to juror D.C.. Compare *Nelson v. State,* 781 P.2d 994, 998 (Alaska App.1989) (indicating that when a party's peremptory challenges have been exhausted and there is significant doubt about a remaining juror's ability to be fair, a trial judge should be lenient in granting a request for an additional peremptory challenge).

The judgement of the superior court is REVERSED. Pearce is entitled to a new trial.