CHERRY–BURRELL CO. et al. v.
Ray C. THATCHER.

No. 9163.

Circuit Court of Appeals, Ninth Circuit.

Oct. 31, 1939.

Rehearing Denied Jan. 2, 1940.

---

[2] R.S. of N.J. 3:44–1 et seq., N.J.S.A. 3:44–1 et seq.

Speer & Hoffman, of Great Falls, Mont., Corette & Corette, of Butte, Mont., and Bronson, Bronson & McKinnon, of San Francisco, Cal., for appellants.

Walker & Walker and Harlow Pease, all of Butte, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

This is an appeal from a judgment rendered for appellee in an action brought by him against appellants to recover for personal injuries alleged to have been sustained by him as the result of a collision of the automobile in which he was riding with an automobile operated by appellant Beardsley in the course of his employment with the corporate appellant.

Appellee and Beardsley were both traveling salesmen at the time of the accident in question. On June 25, 1935, a rear tire on appellee's automobile "blew out" and caused a forceful collision with another automobile. Appellee's vehicle was turned around on the road, he was rendered unconscious, and sustained a fractured hip. He was confined to a hospital for 7 weeks, and then at his home for 6 additional weeks. Hè testified that he had no pain after the middle of November, 1935. He resumed his employment on January 1, 1936, but had a driver to assist him until August, 1937.

Highway No. 10 runs southeasterly from Missoula to Deer Lodge in Montana, through the towns of Drummond and Garrison. From Missoula to Drummond

it is 53 miles; from Drummond to Garrison it is 21 miles; and from Garrison to Deer Lodge it is 11 miles. The town of Hall is off Highway No. 10, and 6 miles south of Drummond. On February 6, 1936, at about 11 a. m. a severe blizzard began between Garrison and Deer Lodge. A disinterested witness testified that it was the worst storm there in seven years. It was extremely cold, the snow was blowing in flurries, and banks of snow lined the highway. In some places, the width of the road was sufficient for only one vehicle.

Appellee testified that he left Hall on February 6, 1936, in his panel delivery truck which was being driven by Anderson at about 1:30 p. m.; that upon arrival at Drummond, they then proceeded toward Deer Lodge, and passed through Garrison sometime between 3 and 3:30 p. m.; that just outside Garrison a highway patrolman stopped them, warned them of the storm, and cautioned them to drive slowly and with lights on; that about 4 or 5 miles from Garrison, and between 4 and 5 p. m., a car in attempting to pass them without warning, collided with appellee's car, throwing the rear end thereof sidewise, which caused appellee to be turned in his seat, so that he struck his right side immediately above the hip on the seat occupied by Anderson; that after momentarily stopping to "right" their car, they sped after the car alleged to have struck them; that in a distance of from 100 to 150 feet, the other car "practically" stopped to pass a truck which was stalled, and that they overtook the car so that he was able to note the license number thereof; and that they then proceeded to Deer Lodge, arriving there between 5 and 5:30 p. m., and registered at an hotel.

Beardsley who was driving the car bearing the license number noted by appellee on Highway No. 10 testified that he left Missoula between 1:30 and 2 p. m. and drove slowly all the way, had no accidents of any kind, arrived in Deer Lodge about 5:30 p. m. and went immediately to the Deer Lodge Creamery; that he registered at the hotel at about 5:30 p. m., returned to the creamery, and about 6 p. m. returned to the hotel and left his baggage, and spent the evening with the owner of the creamery.

That evening appellee called a State Highway patrolman to make complaint of the accident. The patrolman referred him to county officers. The following day, appellee reported the accident to the County Sheriff. The memorandum made by the latter at that time was as follows: "Accident 8 miles west of Deer Lodge both cars going East. Burrell Car side-swiped Thatcher car—John Anderson with Thatcher Accident 4 P. M. 6th day Feb." Appellee also signed a complaint in blank at the County Attorney's office. The charge subsequently placed in the complaint was a misdemeanor, although a "hit-and-run" offense in Montana is a felony. Rev.Codes of Mont.1935, § 1754.5. Beardsley was not arrested, but in the early part of March, 1936, was notified of the charge by another County Sheriff. Trial of Beardsley in April, 1936, resulted in an acquittal.

Appellee testified that the collision "knocked off" the tail light and dented the left rear fender and hub cap on his car. As to injury of the car operated by Beardsley, the sheriff, who notified Beardsley of the charge against him, examined such car, and testified that he found "one minor dent on one front fender". Later in March, 1936, Beardsley reported to the sheriff who held the warrant of arrest for Beardsley. The owner of the Deer Lodge Creamery testified that he examined such car at that time and "on the back of the right front fender was a small dent, I would say about three or four inches, and towards the back of the running board, the metal had been scratched a little. The dent was on the top and toward the back of the car—the back part of the fender. I personally investigated the front end of the fender and there were no signs of any dents or marks of any kind on the front end of the fender * * * I examined the rear end of the car, that is the right rear part of the car. There was no mark to show that there had been any sign of a collision."

Appellee testified that he examined the car at the time of Beardsley's trial and that then the front fender and running board on the right side were "bent in".

Appellee testified that he vomited what he was able to eat on the evening of February 6, 1936, and vomited for three or four days afterward. On February 7, 1936 he visited Dr. Brogan who placed tape on his back. About August 1, 1936, he visited Dr. Mondloch who testified that he diagnosed appellee's condition as "sacroiliac strain or sprain, if you will, and sciatica right side, both". Appellee visited Dr. Brown on October 9, 1936. Dr. Brown's notes made at the time state that an examination disclosed no evidence of injury to appellee's back.

On October 13, 1936, appellee filed his complaint to recover compensatory and exemplary damages.

On February 4, 1938, while lifting a grip or trunk tray, appellee had a sharp pain in his back. He was treated the following day by Dr. Emery, and thereafter eight times by Dr. Brown. Appellee testified that he has worn tape and braces since the time of the alleged accident on February 6, 1936.

As to appellee's actual damages, he testified that his average earnings in 1935 were $275 monthly; that following the alleged accident on February 6, 1936, a young salesman accompanied him, and as a result, his earnings decreased; that on April 19, 1937, he was placed on a salary of $178 monthly; and that in April, 1938, he was discharged and had been unable to find employment since that time.

Trial to the court began on November 29, 1938, a jury having been waived. It appeared that although appellee was carrying health and accident insurance and had claimed benefits for the injuries sustained in the accident of June 25, 1935, he had not claimed benefits for the alleged accident of February 6, 1936. On March 7, 1938, appellee submitted an application for benefits of a health and accident policy wherein he stated the injury causing the disability occurred on February 4, 1938. In an intermediate report to the same insurance company on April 22, 1938, he again stated that the said injury occurred on February 4, 1938.

On May 2, 1938, appellee made application to a life insurance company for disability benefits stating that the date of the injury causing the disability was February 4, 1938. Appellants offered in evidence "Proof No. 2" of this claim consisting of Dr. Brown's statement, made on May 6, 1938. In it, Dr. Brown stated: "Seen on Feb. 9—38 at my office history of sudden catch in back toward rt. side while lifting grips one week previous. Diagnosed & treated for acute lumbosacral joint strain". The statement was signed by both Dr. Brown and appellee. Appellee's objection to the admission of this statement in evidence was sustained.

On August 16, 1938, appellee signed an application for life insurance. Answers to the questions therein were suggested and written by the insurance agent, according to appellee's testimony. One question in the application was whether appellee had made claim on account of injuries. The answer mentioned the injuries received in the accident of June 25, 1935, and then stated: "sprained left hip lifting trunk in Jan. 1938 * * * complete recovery 3 months".

On August 18, 1938, appellee signed an application for a health and accident policy. Appellee testified that the insurance agent suggested and wrote the answers to the questions therein. In reply to the question as to whether appellee had ever made a claim under a health and accident policy, after mentioning the accident in 1935, it was stated: "Jan. 1938 sprained sacroiliac right side—Lifting grip * * * complete recovery in 12 weeks." With respect to these applications, appellee testified that it was necessary for him to state that he had recovered from his injuries or the policies applied for would not be issued.

Appellants offered in evidence two hotel register sheets. On the front side of one sheet was the date "Thursday, February 6, 1936". Appellee and Anderson were the twentieth and twenty-first registrations on the front side of the sheet, and were followed by five more registrations. On the back side of the sheet was the date "Friday, February 7, 1936" but the word "Friday" had been "crossed out" and the word "Thursday" written above it. The back side of the sheet shows seven registrations, then the registration of Beardsley, followed by another registration, and then the registration of four men who worked on a train which arrived in Deer Lodge at 5:49 p. m. on February 6, 1936. Appellee's objection to the admission of this registration sheet was sustained.

The medical testimony agreed as to appellee's condition at the time of the trial, but disagreed as to the cause thereof. Drs. Mondloch and Emery expressed the opinion that appellee's condition was caused by the alleged accident of February 6, 1936. Drs. Colman and Shields testified that appellee's condition was the result of the injury sustained in the accident of June 25, 1935.

Finally there was evidence that Beardsley had stated to a sheriff that he was not on the road when the accident was supposed to have occurred.

The trial court found that the alleged accident did in fact occur and that appellee sustained the disability of which he now suffers as a result of the accident; that such accident was caused by Beardsley's

negligence; that Beardsley, in violation of the penal laws of Montana, attempted to conceal his identity by flight; and that appellee suffered actual damages in the sum of $10,000, and was entitled to exemplary damages in the sum of $2,000. Judgment was entered in accordance with the findings. This appeal followed.

Appellants contend that there is no substantial evidence to support the verdict because the evidence supporting it is incredible and improbable. In support of this contention appellants rely on the claims and applications made to the insurance companies, the alleged conflict in appellee's testimony as to time, speed and distances, appellee's failure to call Anderson as a witness, Dr. Brown's testimony, and the failure to call Dr. Brogan. We think none of these claims show that appellee's testimony was incredible or improbable.

The mere fact that appellee made no claim for the injuries on insurance companies fails to prove that the accident did not happen. We know of no reason why appellee could not, if he wished, waive his claim against the insurance companies and pursue appellants. Little importance need be attached to the alleged conflict in appellee's testimony as to time, speed and distances, for they were mere estimates. As to the point made that Anderson was not called to testify, it appeared that he did testify at Beardsley's trial. Appellant's counsel had taken notes of at least part of the testimony there. Had it been unfavorable to appellee, then it is probable that appellants would have taken his testimony. The fact that Dr. Brogan, who treated appellee only once, was not called, means nothing, for it is quite possible he could have added nothing to the testimony of the other doctors. There is a conflict between the evidence of Dr. Brown and Doctors Mondloch and Emery, but that fails to show that the testimony of the latter is incredible.

This is simply a case of a conflict in the evidence, and the court below reached its conclusion by determining the weight of the evidence and the credibility of witnesses. Giving due regard "to the opportunity of the trial court to judge of the credibility of the witnesses" as we are required to do, Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c, we cannot say that the findings are "clearly erroneous". We cannot, therefore, set aside the findings.

Appellants further contend that the finding of compensatory damages is not supported by the evidence. We cannot agree. The evidence discloses a decrease in earning power of $97 per month until April, 1938. There was also evidence that he should not engage in the heavy work he had been doing. In addition, it is difficult to measure the cost of pain endured. Appellee's testimony was that he had suffered pain since February 6, 1936, and there is nothing to show that it will discontinue.

Appellants also complain of the award of exemplary damages. Exemplary damages are authorized in cases not arising on contract where the defendant "has been guilty of oppression, fraud, or malice, actual or presumed". Rev.Codes of Mont. 1935, § 8666. Appellant contends that negligence or gross negligence is not sufficient to permit an award of exemplary damages, and to authorize such an award, it must be shown that defendant had a guilty intent. However, "malice in law" would be implied, where defendant's conduct is unjustifiable. Cashin v. Northern Pac. R. Co., 96 Mont. 92, 28 P.2d 862, 869 and cases cited. Considering the state of the weather, the trial court could properly find Beardsley's conduct to have been "unjustifiable".

Finally, it is contended that the exclusion of the statement of Dr. Brown signed by appellee, and the hotel register sheet was error. Dr. Brown's statement added nothing to the statements in the other claims and applications. It was cumulative only. The hotel register sheet was offered to confirm "Beardsley's story that he was behind Thatcher and never caught up to him or passed him". The register fails to show that fact. Although Beardsley testified that he registered at 5:40 p. m., that fact did not disprove that he did cause the accident. We think that there was no reversible error in excluding these documents.

Affirmed.