Vera M. GRIMES, Appellant and
Cross-Appellee,

v.

Sharon K. HASLETT, Appellee and
Cross-Appellant.

Nos. 5295, 5296.

Supreme Court of Alaska.

March 12, 1982.

Roger E. Henderson, Houston, Henderson & Peterson, Anchorage, for appellant and cross-appellee.

Russellyn S. Carruth, Burr, Pease & Kurtz, Inc., Anchorage, for appellee and cross-appellant.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

In the fall of 1976, Vera Grimes was involved in three separate car accidents. A year later, she filed suit against the various drivers and an insurer, seeking compensation for injuries allegedly suffered as a result of the accidents. This appeal arises from the trial of Grimes' claims against one of those drivers, Sharon Haslett. The car that Haslett was driving had struck the rear of Grimes' car in Anchorage on October 9, 1976. Grimes claimed that Haslett was negligent, but the jury returned a general verdict in favor of Haslett. On appeal, Grimes asserts that the superior court erred concerning a peremptory challenge of an alternate juror, a jury instruction on damages for lost earning capacity, and the denial of her motions for directed verdict, for judgment notwithstanding the verdict and for a new trial. Haslett has cross-appealed, contending that the superior court erred in denying her motion for a directed verdict, in excluding evidence that Grimes failed to

comply with a discovery request, and in admitting the evidence that Grimes failed to disclose during discovery.

## I. *Peremptory Challenge of Alternate Juror*

The first question before us is whether the trial court erred in refusing to allow Grimes' peremptory challenge of an alternate juror. After twelve regular jury members had been selected, the court proceeded to allow selection of one alternate juror, as authorized by Alaska Rule of Civil Procedure 47(b).[1] The first person called for examination *voir dire* was peremptorily challenged by Haslett and dismissed by the court. The next prospective juror was questioned by both sides and found acceptable as an alternate by Haslett. Immediately thereafter, the following exchange took place between the trial judge and Grimes' counsel:

> COURT: I don't think there's any more challenges left, except for cause.... There's only one challenge per side allowed. You did not exercise one when challenge was allowed, so as far as I'm concerned, the challenges have been exhausted.
>
> [GRIMES'] COUNSEL: Well, Your Honor, I thought I had three challenges.
>
> COURT: Three challenges to the alternate?
>
> COUNSEL: Oh, no, not—
>
> COURT: Oh, no. Let's see.
>
> COUNSEL: Right.
>
> COURT: The challenges as to the jury have been used up.
>
> COUNSEL: Right.

> COURT: So we're down to the alternate.
>
> COUNSEL: Right.
>
> COURT: And there are no more challenges.
>
> COUNSEL: Very fine, Your Honor.
>
> COURT: If there are challenges for cause, I'll hear them now.
>
> COUNSEL: I have no challenge for cause.

The jury was then sworn.

The superior court thus stated that Grimes had exhausted the one peremptory challenge allowed her under Civil Rule 47(b). Grimes asserts that this constituted a ruling erroneously denying her a peremptory challenge against the alternate.

Grimes is partly correct—she did have one peremptory challenge remaining. The issue, however, is whether she attempted to exercise this right in a timely fashion. Peremptory challenges that are not exercised timely are considered waived: "The general rule today, as at common law, is that a juror must be peremptorily challenged, if at all, before he is sworn; otherwise a waiver results." 47 Am.Jur.2d *Jury* § 256, at 834 (1969); *King v. State*, 125 Fla. 316, 169 So. 747, 748 (1936); *Lengyel v. Brandmiller*, 139 Ohio St. 478, 40 N.E.2d 909, 911 (1942). *Cf. Irwin v. Radio Corp. of America*, 430 P.2d 159, 161 (Alaska 1967) (right to challenge sufficiency of jury panel waived when no objection made until after jury selected and sworn).

At the time the alternate juror was examined, the superior court was not prompted to issue a ruling on whether Grimes had a peremptory challenge remaining.

---

1. Civil Rule 47(b) states:

    The court may direct that one or two jurors in addition to the regular panel be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities and privileges as the principal jurors. An alternate juror who does not replace a principal juror shall be discharged after the jury retires to consider its verdict.

    If one or two alternate jurors are called, each party is entitled to one peremptory challenge in addition to those otherwise allowed by paragraph (d) of this rule. The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by paragraph (d) of this rule shall not be used against the alternates.

Grimes' counsel did not indicate a desire to challenge either the alternate juror or any "ruling" by the superior court. The words, "I object," are not a magical requirement, but "ordinarily a litigant must alert the trial court to the error and set forth the grounds of his objection so that the court can nullify the error by appropriate action . . . ." R. Traynor, The Riddle of Harmless Error 77–78 (1970). Counsel for Grimes did not do so. Instead, he accepted the superior court's belief that Grimes had exhausted her peremptory challenges.

■■■ It was not until the next day, after the jury had been sworn, that Grimes' counsel attempted to make a peremptory challenge to the alternate juror. The absence of a regular juror had created a vacancy and the superior court replaced the missing juror with the alternate. Grimes' counsel tried then to exercise a peremptory challenge, stating that he had not intended to fully accept the alternate juror the day before. This challenge was untimely and it was therefore properly denied by the court.[2]

## II. Instruction On Lost Earning Capacity

We next consider whether the superior court properly instructed the jury how to award damages for lost earning capacity. The court's instruction was as follows:

> If under the court's instructions you find that the plaintiff, Vera M. Grimes, is entitled to a verdict, in arriving at the amount of the award, you shall determine each of the items of claimed detriment which I am about to mention, provided that you find it to have been suffered by her, and as a legal result of defendant's negligence.
>
> . . . .
>
> (3) Such sum as will compensate her reasonably for lost earning capacity which she has suffered and will suffer by

reason of inability to work, if any, and legally resulting from the defendant's negligence.

> In determining this amount, you should consider evidence of plaintiff's earning capacity, her earnings, how she ordinarily occupied herself, and find what she was reasonably probable to have earned in the time lost if she had not been injured.
>
> A person's ability to work may have a monetary value even though she is not employed by another.
>
> The law does not require exact proof of the number of days or hours lost or which will be lost from work, but it does require proof that such loss has occurred or is likely to occur with reasonable probability. You are the sole judge of what amount of damages would compensate for such loss. The law does require, however, that the jury shall exercise its authority with calm and reasonable judgment and that the damages shall be just and reasonable in the light of the evidence.
>
> In determining this amount, you should consider evidence of plaintiff's earning capacity, her earnings, how she ordinarily occupied herself, her age, her physical condition, and find the reasonable value to compensate plaintiff for any impairment of her future earning capacity.

Grimes bases her claim of error upon the part of the instruction reading, "The law does not require exact proof of the number of days or hours lost or which will be lost from work, but it does require proof that such loss has occurred or is likely to occur with reasonable probability." Grimes asserts that this instruction required the jury to find actual loss of earnings in order to make an award, contrary to the established law of Alaska.

**2.** The superior court denied the challenge on two grounds. First, it reasoned that Grimes had waived her peremptory challenge to the second alternate juror by not challenging the first alternate interviewed. We do not understand how the superior court arrived at such a convoluted construction of Civil Rule 47. Civil Rule 47(d) provides in part that a "party who waives peremptory challenge as to the jurors in the box does not thereby lose the challenge but may exercise it as to new jurors who may be called." However, as a second basis for its ruling, the superior court adopted Haslett's argument that the peremptory challenge was untimely. We agree.

We have defined the impairment of earning capacity as the permanent diminution of the *ability* to earn money. *City of Fairbanks v. Nesbett*, 432 P.2d 607, 617 (Alaska 1967). Consequently, an award of "lost earnings" does not satisfy an injured party's entitlement to compensation for lost earning capacity.[3] *Morrison v. State*, 516 P.2d 402, 404 (Alaska 1973).

An erroneous statement of law in a jury instruction will not constitute reversible error unless it prejudiced one of the parties. *City of Nome v. Ailak*, 570 P.2d 162, 172 (Alaska 1977). Viewed in its context, it is clear that the challenged instruction in this case while perhaps somewhat confusing is not seriously defective.[4] It could not have misled the jury into requiring proof of lost earnings. First, the challenged instruction is subsumed within § (3) of the damages instruction, which refers specifically to compensation for lost earning capacity, not lost earnings. Second, the instruction did not require the jury to find that Grimes had suffered an actual loss of earnings. Instead, it required the jury to find with reasonable certainty that Grimes would suffer a loss in *earning capacity* as a result of the accident. The fact that lost earnings need not be proven in order to recover for impaired earning capacity does not obviate the need to prove actual impairment of earning capacity. *Nesbett*, 432 P.2d at 617. *See generally* W. Prosser, Law of Torts § 30, at 143–44 (4th ed. 1971). Thus, the instruction was not reversible error.

## III. Denial of Motions for Directed Verdict, Judgment N.O.V. and New Trial

The final issue on appeal is whether the superior court erred in denying Grimes' motions for directed verdict, for judgment notwithstanding the verdict and for a new trial. Following the presentation of evidence, Grimes moved for a directed verdict on the issue of liability. The superior court denied this motion. After the jury rendered its verdict in favor of Haslett, Grimes made a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion was also denied. Grimes contends that these rulings were erroneous and call for a new trial.

In refusing to direct a verdict on liability the superior court necessarily allowed both the issues of negligence and causation, the two major elements of tort liability, to reach the jury. The jury rendered a general verdict in favor of Haslett without reaching specific conclusions as to whether Haslett was negligent or whether she caused

---

3. The right of an injured homemaker to recover for impaired earning capacity regardless of whether she was employed before the injury exemplifies the distinction between an award for lost earnings and an award for lost earning capacity. *Morrison v. State*, 516 P.2d 402, 405 (Alaska 1973).

4. Because a new trial is required for the reasons expressed in part III of this opinion, we recommend that the trial court use at the new trial an instruction patterned on the form instruction concerning future earning capacity prepared by this court's standing committee on civil jury instructions which is now circulating standard instructions in Draft Form. The Committee's instruction reads:

    20.04. *Future Earning Capacity.*

    The (First, second, etc.) item of claimed loss is the reduction in the ability of the plaintiff to earn money in the future.

    You may award the plaintiff a fair amount for any reduction in (his) future ability to earn money that (he) is reasonably certain to experience.

    [In fixing this amount you must determine the difference between the plaintiff's ability to earn money before the (accident) [for (his) life expectancy as it then existed] and (his) ability to earn after the accident [with (his) current life expectancy.] To do this you may consider the plaintiff's health, physical and mental abilities, (his) work habits and occupation before the accident and the nature, and the extent of (his) injuries and how long and to what extent (his) injuries will affect (his) earning ability in the future.]

    [In deciding the plaintiff's future earning ability both before and after the accident you may consider the wages he earned before and after the accident and any reasonably certain increases in those wages due to promotions or automatic step increases. You should not consider any likely pay increases due to increases in the cost of living, and you should not make any deduction for any likely income taxes applicable to these earnings.]

Grimes' injury. Thus, the jury's general verdict comprehends two issues—negligence and causation.

■ In the context of a general verdict comprising more than one issue the erroneous refusal to direct a verdict as to one issue constitutes grounds for a new trial unless the nonmoving party would prevail, as a matter of law, upon the other issue.

"Where several issues of fact are tried and any one of them is erroneously submitted to the jury and a general verdict is returned for plaintiff, defendant is entitled to have the verdict set aside and to have a new trial, unless it conclusively appears as a matter of law that plaintiff was entitled to the verdict upon other grounds." [Citation omitted.] The reason for requiring the new trial is the impossibility of knowing whether the general verdict was based upon a properly submitted issue or an improperly submitted issue.

*Schroht v. Voll*, 245 Minn. 114, 71 N.W.2d 843, 846 (Minn.1955). *Accord, Miracle Boot Puller Co. v. Plastray Corp.*, 84 Mich.App. 118, 269 N.W.2d 496, 498 (Mich.App.1978); *Duncan v. Germaine*, 330 So.2d 479, 481 (Fla.App.1976). Under this test, if it was error to submit either the negligence or causation questions to the jury, then a new trial is required unless Haslett was entitled to a verdict as a matter of law on the other question. Thus, we first inquire whether the superior court erred in not directing a verdict that Haslett was negligent or that she caused Grimes' injuries.

■ A directed verdict or judgment notwithstanding the verdict is justified only if "the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable men could not differ in their judgment." *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978), *quoting Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974); *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 723 (Alaska 1975); *Snipes v. March*, 378 P.2d 827, 828 (Alaska 1963). Our review of the denial of motions for directed verdict or judgment notwithstand-

ing the verdict is narrow; we shall not "weigh conflicting evidence or judge of the credibility of witnesses." *City of Whittier*, 577 P.2d at 220, *quoting Holiday Inns*, 520 P.2d at 92.

■ We recognize that a driver who strikes a car from the rear is not per se negligent. When "there is no reason to anticipate the conduct of the preceding driver, the driver who follows may not be responsible for the collision." *Hahn v. Russ*, 611 P.2d 66, 67 (Alaska 1980) (citing *Rhoades v. DeRosier*, 14 Wash.App. 946, 546 P.2d 930, 933 (1976)). However, we have held that "[o]ne should expect sudden stops in heavy traffic, especially when it has recently been stop-and-go" and that to rear-end a car under these circumstances constitutes negligence as a matter of law. *Hahn*, 611 P.2d at 68.

■ Grimes' stop in this case should also have been anticipated. Grimes had to stop for a car which was turning into a McDonald's "restaurant", on the other side of the intersection. Left turns onto business premises are a fairly routine traffic event. Grimes testified that the car ahead signalled before it turned, and that she had time to come to a complete stop. Haslett, for no apparent reason, could not stop in time. Haslett admitted that she was probably following too close and that she felt that this caused the accident. Moreover, Haslett offered no proof that the accident was the fault of an unexpected occurrence. Thus, we cannot avoid the conclusion that a directed verdict should have been granted in Grimes' favor on the question of negligence.

■ Because the superior court erred in not directing a verdict that Haslett was negligent, a new trial is required unless Haslett can show, as a matter of law, that "there is no reasonable connection between the [automobile accident] and the damage which the plaintiff has suffered." *See generally* W. Prosser, Law of Torts, § 41, at 236 & 242 (4th ed. 1971).

Our review of the record discloses that, when the evidence is reviewed in the light most favorable to Haslett, reasonable persons could easily differ as to whether the October 9 collision caused the full extent of Grimes' incapacity,[5] but no reasonable juror could have concluded other than that Grimes suffered at least some damages. Grimes' car was completely stopped when it was struck by Haslett's car travelling at ten to fifteen miles per hour. Such a collision does not occur without some discomfort resulting to the occupants of the car that is struck. Moreover, Dr. Dittrich opined that Grimes suffered a temporary muscle strain as a result of the first accident. Haslett did not refute this testimony. Clearly, Grimes was entitled to a directed verdict on liability and an award for these damages.[6] Thus, we remand this case for a new trial on the issue of damages.

### IV. Cross-Appeal

Our decision that Grimes should have been granted a directed verdict on liability settles the question of whether Haslett was entitled to a directed verdict on liability. The other cross-appeal issues remain.

First, Haslett contends that the superior court erred in barring evidence that Grimes failed to comply with a discovery request for medical records. In particular, Grimes failed to produce the records of two examinations she underwent with Dr. Serrato, some time after the accident. Haslett argues that the court should have instructed the jury to infer that the requested evidence was unfavorable to Grimes' case.

Haslett had made a general request for copies of "all medical records pertaining to the plaintiff made since the first accident ...." Allegedly, Haslett also asked Grimes to provide written medical releases for all records that Grimes was having trouble obtaining herself.

Grimes maintains that she neither possesses Dr. Serrato's records of her visits, nor knows whether such records were even made. Grimes asserts that she did not consider Dr. Serrato to be a relevant or material witness because his examinations had been brief and perfunctory. She testified that his examinations lasted only several minutes. However, the examinations apparently lasted long enough for the doctor to recommend a course of treatment.

The superior court rejected Haslett's proposed jury instruction because the very brief duration of Dr. Serrato's examination of Grimes made it unlikely that he "could be the source of anything of interest in this case." For the same reason the court also doubted that a record of the examination had ever been prepared. In view of the remote likelihood of the medical record's existence and materiality the superior court

---

5. Haslett presented substantial medical testimony supporting her contention that Grimes' lower back injury was not the result of their collision. Dr. Dittrich, who was Grimes' treating physician, testified that he found no physical or structural injury following the October 9 accident and that he found no basis for attributing Grimes' physical problems to that accident. Dr. Dittrich concluded that this accident had produced only a muscle strain. He indicated that rear-end collisions usually cause injury to the neck and upper spine, not the lower back. Another physician, Dr. Jones, stated that Grimes' three automobile accidents in 1976 may have exacerbated a preexisting condition, but he diagnosed her symptoms as a recurrence of back problems she had experienced prior to the accidents. Dr. Lyon, a third physician, testified that he treated Grimes in 1973 and at that time she had presented a history of lower back pain over the previous four years. He stated that Grimes' condition was compatible with degenerative disk disease, which usually progresses with time.

In addition to corroborative medical testimony, Haslett presented other evidence that the rear-end collision had not caused Grimes' disability. For example, there was testimony that Haslett was driving slowly and that the collision produced only minor damage to the cars. Also, after the accident Grimes waited nearly five weeks before going to see a doctor. Furthermore, Grimes' claim of being almost totally disabled by the October 9 accident was called into question by evidence that she was driving a car on November 26, 1976, the occasion of her second accident, and that she was married on December 23, 1976, immediately after being involved in a third car accident.

6. Thus, we do not have to rule on the propriety of the superior court's denial of Grimes' motion for a new trial.

believed it would be inappropriate to instruct the jury as Haslett requested.

■ Failure to call a witness or produce evidence does not automatically warrant an adverse inference. Before the inference can be applied the potential witness must be available, must appear to have special information that is relevant to the case and not merely cumulative, and the witness must be one that would ordinarily be expected to favor the party against whom the inference is directed. C. McCormick, Law of Evidence § 272, at 656–57 (2d ed. 1972). Possible conjecture or ambiguity is one factor counseling against use of the adverse inference. *Id.* at 657.

In *Cherry-Burrell Co. v. Thatcher*, 107 F.2d 65, 69 (9th Cir. 1939), the court held that an accident victim's failure to call as witness a doctor that had treated him only once did not justify an adverse inference. The court stated that "quite possibly" the doctor could have added nothing to the testimony of other doctors. *Id.*

In this case the superior court relied upon a similar consideration when it stated that the failure to provide Dr. Serrato's records did not deprive Haslett of anything "of substance". The evidence indicated that the medical records, if any, would have constituted cumulative evidence at best.

■ The superior court had to balance a very speculative harm to Haslett's case against a serious impeachment of Grimes' credibility. We find no abuse of discretion in its refusal to instruct the jury as requested.

Second, Haslett contends that the superior court should have precluded Grimes' expert witness, Dr. Snead, from testifying because Grimes failed to supplement her responses to interrogatories concerning Dr. Snead's testimony.

During discovery Haslett submitted interrogatories asking Grimes to state, among other things, the opinions of her expert witnesses and the grounds of their opinions. As to Dr. Snead, Haslett agreed to accept his March 1978 deposition in lieu of response to the interrogatory, provided that his expected testimony had not changed.

■ Civil Rule 26(e)(1)(B) imposes a duty to supplement one's response to an interrogatory concerning the subject matter of an expert witness' testimony.[7] 8 C. Wright & A. Miller, Federal Practice and Procedure § 2049, at 322–23 (1970). Grimes was under a continuing duty to inform Haslett of any change in Dr. Snead's opinion or the basis of that opinion. We first inquire whether Grimes in fact breached her duty to supplement discovery responses.

When he was deposed in March 1978 Dr. Snead stated that Grimes suffered from "a fairly classical" mechanical compression of the S–1 nerve root, probably caused by scar tissue or a ruptured disk stemming from the auto accident. He stated that he had discussed with Grimes the possibility of an epidural nerve block, a treatment involving the injection of a long-acting anesthetic into the spine's epidural cavity but that he had not recommended it because the benefits were too "unpredictable."

At trial, Haslett learned that Dr. Snead had examined Grimes on three occasions since his deposition and that his diagnosis and recommended treatment differed in several respects from what he had stated in his deposition previously. Dr. Snead now believed that the compression existed at the L–5 nerve root rather than the S–1, though he would not rule out the possibility that the S–1 nerve root could also be damaged. Moreover, he now recommended the epidur-

7. Rule 26(e), Alaska R.Civ.P. is adopted from the identical federal provision, Rule 26(e), Fed. R.Civ.P., and provides in part:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to .... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

al block treatment and for the first time he described Grimes' condition as "osteoarthritis," rather than scarring.

Nevertheless, Dr. Snead insisted that his opinion of Grimes' injury had not changed; that "scarring" and "osteoarthritis" were related terms describing "the same pathology in the same area." He did not change his view that the car accident was the original cause of Grimes' condition.

It appears that Dr. Snead did not change his overall diagnosis that Grimes suffered from a mechanical compression of the spine, and that the compression caused nerve root damage.

On the other hand, we cannot dismiss the variations in Dr. Snead's testimony between the time of his deposition and the trial as insignificant. Haslett had prepared to refute Dr. Snead's original opinion that surgical scar tissue had caused Grimes' incapacity. The revelation at trial of a new diagnosis—osteoarthritis—surprised Haslett. Moreover, in light of testimony that rear-end collisions usually affect the upper spine, Dr. Snead's opinion as to the exact location of the injury, whether at S–1 or L–5, had added significance. Grimes failed to inform Haslett of these changes in Dr. Snead's expected testimony. At the very least, Dr. Snead's changed recommendation in favor of the epidural block treatment, which relates directly to ascertaining Grimes' chances of recovery, should have been communicated to Haslett. Thus, we hold that Grimes breached her duty to supplement discovery.

The civil rules do not explicitly authorize sanctions for breach of the duty to supplement responses to interrogatories. The Advisory Committee's Note to Rule 26(e), Fed.R.Civ.P. states that "[t]he duty will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate." 48 F.R.D. 487, at 508. Although there is some "theoretical difficulty in divining the source of the power to impose these sanctions,"[8] the trial court has inherent power to exercise this authority. Wright & Miller, *supra* § 2050, at 325; *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *Halverson v. Campbell Soup Co.*, 374 F.2d 810, 812 (7th Cir. 1967). The trial court has broad discretion in imposing sanctions respecting Rule 26(e), as it does under Rule 37, and its decision in these matters will only be overturned upon an abuse of discretion. *Campbell Industries*, 619 F.2d at 27; *Halverson*, 374 F.2d at 812; Wright & Miller, *supra*, § 2050, n.5, at 326. *Cf., Drickerson v. Drickerson*, 604 P.2d 1082, 1087 (Alaska 1979) (trial court's decision whether to impose sanctions pursuant to Civil Rule 37 subject to abuse of discretion review.)

Because Dr. Snead was Grimes' only expert witness the superior court believed that preclusion of his testimony would be too harsh a sanction for Grimes' failure to observe Rule 26(e). The superior court decided that a more appropriate remedy was to allow Haslett additional time in order to conduct a medical examination of Grimes and develop rebutting testimony. Haslett later introduced expert testimony rebutting

---

**8.** Wright and Miller explain the difficulty:

Rule 37, the general rule on sanctions, has no application. Failure to supplement a response—or making an incorrect response in the first instance—is not one of the kinds of flagrant misconduct listed in Rule 37(d) for which the sanctions of that § are available. The sanctions of Rule 37(b) may be imposed only for violation of a court order under Rule 35 or Rule 37(a) requiring a party to provide or permit discovery. In the situation presently being considered there will have been no opportunity for such an order. Thus suppose an interrogatory asking a party to name all persons with knowledge of discoverable facts. Rule 26(e)(1)(A) creates a continuing duty to supplement the response to such an interrogatory. But the party may ignore this duty and call at the trial a witness who has not been named. An order at that point to file a supplemental response would serve no useful purpose. The question is what sanction to impose for the party's failure to perform his duty at an earlier time. Rule 37 is silent on this point.

8 C. Wright & A. Miller, Federal Practice and Procedure, § 2050, at 325 (1970).

Dr. Snead's diagnosis of nerve root compression in either the S–1 or the L–5 area.

 We are convinced that the sanction chosen by the superior court struck a reasonable balance between the interest in compelling observance of the rules of discovery and in avoiding undue prejudice to either party. The court's refusal to preclude Dr. Snead's testimony was not an abuse of discretion.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.