*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MICHELE MARSHALL and DONALD MARSHALL, Husband and Wife, | ) ) ) |  Supreme Court No. S-16017 |
| Appellants, | )  Superior Court No. 3AN-14-04950 CI |
| v. | )  O P I N I O N |
| MATTHEW H. PETER and ROBERT L. NELSON, | )  No. 7123 – August 26, 2016 |
| Appellees. | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Robert C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellants. Gregory R. Henrikson and Laura Eakes, Walker & Eakes, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

BOLGER, Justice.
STOWERS, Chief Justice, concurring.

I.      INTRODUCTION

On a particularly icy day, a driver came to a stop about one-half car length behind a vehicle stopped at a stoplight. After the vehicle ahead began to move forward, the driver behind released his foot from the brake, but the driver ahead stopped sooner than the following driver expected. Despite his braking and his low speed, the driver

behind slid into the back of the car. The driver ahead contends that no reasonable juror could have found the other driver not negligent and that the superior court therefore should have granted her motion for a directed verdict on liability. We conclude that the jury reasonably found the driver behind not negligent, and we therefore affirm the denial of the motion.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Mid-afternoon on an icy early March day, plaintiff Michele Marshall was stopped at a stoplight on 36th Avenue in Anchorage preparing to turn left onto New Seward Highway from the outside turn lane. Two Jack Russell terriers were in the backseat. Defendant Matthew Peter testified that he came to a complete stop about one-half car length behind her. After about 30 seconds, the light turned green, Marshall began to move forward, and Peter released his foot from the brake. But Marshall stopped sooner than Peter expected; Peter returned his foot to the brake, attempted to stop, and slid into Marshall's vehicle. He testified that his car "just tapped the back of her car" at a speed that "couldn't [have] be[en] more than three miles an hour." He had yet to place his foot on the accelerator.

Marshall recalled stopping and then after a "long pause" feeling "slammed" from behind. She testified that she had not yet entered the intersection when the light turned yellow for the second or third vehicle in front of her: "[K]nowing that I would not be able to make it through on the . . . red light[,] I came to a stop on . . . the red light." The collision was so forceful, she testified, that her car slid forward one car length and her purse and dogs fell to the floor. She confirmed that her brake lights were functioning and emphasized both the particularly slick conditions and the "very short" nature of the light. Peter recalled that one or two vehicles were in front of Marshall; he and Marshall "weren't very far behind." Though Peter could see the intersection, he did not recall

whether the light was red when he saw Marshall stop. His attention, he explained, was focused on the space between his car and hers; he confirmed he was not "in any way distracted."

At the scene of the collision, Officer Michael Farr of the Anchorage Police Department questioned Marshall and Peter about the incident. Farr testified that there appeared to be no damage to either vehicle. Marshall told him that she was experiencing neck pain and noted that a previous collision had left her completely disabled. Based on Peter's and Marshall's brief descriptions, Farr concluded that Marshall had not done "any improper driving" and that Peter had engaged in an improper start.[1]

## B.    Proceedings

In February 2014, about two years after the collision, Marshall and her husband filed a complaint alleging that Peter was negligent and claiming about $212,500 in damages — car damage ($1,029.35), medical bills ($51,458.57), personal pain and suffering ($150,000), and loss of consortium ($10,000). About one month later, Marshall moved for summary judgment on the issue of Peter's liability. Within the week Peter made two offers of judgment under Alaska Civil Rule 68: $2,651.17 for Marshall's claims plus costs, applicable interest, and Alaska Civil Rule 82 attorney's fees; and $100

---

[1]    *See* Anchorage Municipal Code (AMC) 09.22.030(A) (2011) ("No person may start or place in motion a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety."). Though Farr briefly noted at trial that Peter received a citation for that violation, the citation was not offered into evidence.

for her husband's loss of consortium claim plus costs, applicable interest, and Rule 82 attorney's fees.[2] Marshall did not reply to either offer, and about two months later the superior court denied her motion for summary judgment.

At the jury trial, Marshall, Peter, and Officer Farr testified to the above account. Marshall also called four other witnesses: her husband, the owner of the car Peter was driving,[3] and two physicians who treated her before and after the March 2012 collision.

After Peter rested Marshall moved for a directed verdict on the issue of liability.[4] The court denied the motion. The court stated that the motion was not timely because Marshall did not make the motion before she rested, and even if timely there was evidence to suggest that liability was an issue — the parties were stopped at a stoplight, the roads were very icy, and Peter testified that "he hadn't even put his foot on the gas."

On a special verdict form, the jury found Peter not negligent. Marshall then moved for judgment notwithstanding the verdict[5] and in the alternative for a new trial.[6] Peter moved for actual attorney's fees under Rule 68[7] and in the alternative for fees

---

[2] *See* Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[3] Marshall named the car's owners as well as Peter as defendants in the complaint, claiming that the owners were vicariously liable for Peter's alleged negligence. The owners' liability is not at issue in this appeal.

[4] *See* Alaska R. Civ. P. 50(a).

[5] *See* Alaska R. Civ. P. 50(b).

[6] *See* Alaska R. Civ. P. 59.

[7] *See* Alaska R. Civ. P. 68 ("If the judgment finally rendered by the court is
(continued...)

under Civil Rule 82.[8] The court denied Marshall's motion and granted Peter's motion, awarding him 75% of reasonable actual fees under Rule 68 for a total of $61,641.00.

Marshall appeals the denial of her motion for a directed verdict and the attorney's fee award.

## III. STANDARD OF REVIEW

In reviewing the denial of a motion for a directed verdict, "we apply an objective test to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judgment."[9] "[B]ecause the sufficiency of the evidence to support a jury verdict is a question of law," we review the denial of a motion for a directed verdict de novo.[10]

" 'We review an award of attorney's fees for abuse of discretion,' so a fee award 'will not be disturbed on appeal unless it is "arbitrary, capricious, or manifestly unreasonable." ' "[11] But we consider de novo "[w]hether the superior court applied the

---

[7]    (...continued)
at least 5 percent less favorable to the offeree than the offer . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made . . . .").

[8]    *See* Alaska R. Civ. P. 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred . . . .").

[9]    *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 83 (Alaska 2015) (alteration in original) (quoting *Turner v. Municipality of Anchorage*, 171 P.3d 180, 185 (Alaska 2007)).

[10]    *Cameron v. Chang-Craft*, 251 P.3d 1008, 1018 (Alaska 2011) (citing *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1117 (Alaska 2009)).

[11]    *Limeres v. Limeres*, 367 P.3d 683, 686 (Alaska 2016) (footnote omitted) (continued...)

appropriate legal standard in its consideration of a fee petition,"[12] including "whether [the] superior court correctly determined a settlement offer's compliance with Rule 68."[13]

## IV. DISCUSSION

### A. Reasonable Jurors Could Differ Over Whether Peter Was Negligent.

Marshall contends that no reasonable juror could have found Peter not negligent and therefore the superior court erred when it denied her motion for a directed verdict.[14] As noted we review de novo a grant or denial of a motion for a directed verdict.[15] Here, after objectively reviewing the evidence in the light most favorable to Peter, the non-moving party,[16] we conclude that reasonable persons could differ in their judgment as to Peter's liability. Therefore we affirm the denial of Marshall's motion.

---

[11]    (...continued)
(first quoting *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013); then quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[12]    *Id.* at 686-87 (alteration in original) (quoting *Powell v. Powell*, 194 P.3d 364, 368 (Alaska 2008)).

[13]    *Tagaban v. City of Pelican*, 358 P.3d 571, 575 (Alaska 2015) (quoting *Beal v. McGuire*, 216 P.3d 1154, 1162 (Alaska 2009)).

[14]    Marshall also argues that the superior court incorrectly ruled that her motion for a directed verdict was untimely. But any such error did not cause Marshall prejudice because the court also denied the motion on its merits, and therefore we do not reach the issue. *See Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1016 (Alaska 2010) ("But the superior court's failure to allow [the appellant] adequate time to respond does not require a reversal of its decision because [the appellant] can show no resulting prejudice." (citing *Boggess v. State*, 783 P.2d 1173, 1182 (Alaska App. 1989))).

[15]    *Cameron*, 251 P.3d at 1018.

[16]    *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 83 (Alaska 2015).

In four previous cases, we have held that the evidence could only support a conclusion that the following driver was negligent.[17] A driver exercising due care must anticipate changing road conditions,[18] and absent notice to the contrary a following driver generally can assume that other drivers will obey the law.[19] Thus a reasonable driver generally anticipates sudden stops, routine turns, stalled vehicles, downgrades, intersections, and treacherous road surfaces.[20] In accounting for such conditions, a driver must control his or her speed and maintain a safe following distance.[21] A failure to stop safely cannot be justified by the mere existence of icy conditions and suddenly stopping vehicles.[22]

---

[17]  *See Green v. Plutt*, 790 P.2d 1347 (Alaska 1990); *Grimes v. Haslett*, 641 P.2d 813 (Alaska 1982); *Hahn v. Russ*, 611 P.2d 66 (Alaska 1980); *Clabaugh v. Bottcher*, 545 P.2d 172 (Alaska 1976).

[18]  *See, e.g.*, *Green*, 790 P.2d at 1349 (vehicles stopped in roadway); *Grimes*, 641 P.2d at 819 (vehicle braking before routine left turn); *Hahn*, 611 P.2d at 67-68 (sudden stop in rush-hour traffic); *Clabaugh*, 545 P.2d at 176 (downgrades, icy surfaces, intersections).

[19]  *See Blackford v. Taggart*, 672 P.2d 888, 890 (Alaska 1983) ("A following motorist has the right to assume, unless he has notice to the contrary or in the exercise of reasonable care he should have notice to the contrary, that a preceding motorist will obey the law." (citing *Perdue v. Pac. Tel. & Tel. Co.*, 326 P.2d 1026, 1030 (Or. 1957))).

[20]  *See Green*, 790 P.2d at 1349; *Grimes*, 641 P.2d at 819-20; *Hahn*, 611 P.2d at 67-68; *Clabaugh*, 545 P.2d at 176.

[21]  *See Green*, 790 P.2d at 1349; *Grimes*, 641 P.2d at 819-20; *Hahn*, 611 P.2d at 67-68; *Clabaugh*, 545 P.2d at 176.

[22]  *Compare Green*, 790 P.2d at 1349 ("Plutt should have anticipated that vehicles on city streets are often called upon to make sudden stops. Her speed and following distance should have been such that she could stop safely when the Blazer braked to a stop."), *Grimes*, 641 P.2d at 819 ("Left turns onto business premises are a
(continued...)

But this case differs from those in which we have concluded that reasonable persons could only conclude that the following driver was negligent. Peter had just stopped and thus was aware of the icy conditions. He knew how his vehicle might respond, and he took conscious measures accordingly. He left about one-half car length between his vehicle and Marshall's vehicle, monitored the distance between his vehicle and hers, and was traveling at a low rate of speed — about three miles per hour — when he slid into her car. Before attempting to stop again, he had only released his foot from the brake. Viewing these facts in the light most favorable to Peter, reasonable persons could conclude that Peter anticipated that Marshall might stop unexpectedly, followed her at a safe distance and speed, and exercised due care when he saw her stop.

We therefore affirm the denial of Marshall's motion for a directed verdict.

## B.     The Settlement Offers Complied With Civil Rule 68.

Marshall contends that Peter's offers of judgment failed to comply with Civil Rule 68 because they were too low to encourage settlement.[23] Peter recognizes his

---

[22]     (...continued)
fairly routine traffic event. . . . Haslett, for no apparent reason, could not stop in time."), *Hahn*, 611 P.2d at 68 ("One should expect sudden stops in heavy traffic, especially when it has recently been stop-and-go."), *and Clabaugh*, 545 P.2d at 176 ("[A]ny driver exercising the privilege of operating a motor vehicle on the highways of interior Alaska at that time of year must be expected to anticipate the presence of ice on the roadway and the possibility of slippery road conditions that will make it difficult to stop."), *with Blackford*, 672 P.2d at 890 (stating that given "Blackford's failure to signal or display brake lights," "[r]easonable jurors could disagree on whether Taggart was negligent in failing to see that Blackford's car was not moving before it was too late to stop").

[23]     Marshall does not challenge the amount of the fee award.

offers of $2,651.17 and $100 were "on the low end of the spectrum," but he contends that the offers nonetheless provided a reasonable starting point for negotiation, as Rule 68 requires. We review de novo whether a settlement offer triggers Rule 68.[24]

Under Civil Rule 68 either party may make "an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued."[25] If the final judgment is at least 5% less favorable to the offeree than the offer (or in the case of multiple defendants, at least 10% less favorable), "*the offeree . . . shall pay all costs* as allowed under the Civil Rules *and shall pay reasonable actual attorney's fees* incurred by the offeror from the date the offer was made."[26] Rule 68 thus creates a financial incentive for settlement by "encourag[ing] parties to assess their litigation risks carefully and penaliz[ing] an offeree's rejection of a reasonable settlement offer."[27]

Not all settlement offers trigger Rule 68. An offer must "serve the purpose of [the rule]": "encourag[ing] settlement and avoid[ing] protracted litigation."[28] Disingenuously low offers that simply attempt to shift litigation costs onto the other party

---

[24]     *Tagaban v. City of Pelican*, 358 P.3d 571, 575 (Alaska 2015).

[25]     Alaska R. Civ. P. 68(a).

[26]     Alaska R. Civ. P. 68(b) (emphases added).

[27]     *Windel v. Mat-Su Title Ins. Agency, Inc.*, 305 P.3d 264, 279 (Alaska 2013).

[28]     *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1289 (Alaska 2010) (quoting *Beal v. McGuire*, 216 P.3d 1154, 1178 (Alaska 2009)); *see also Beal*, 216 P.3d at 1178 ("[O]ffers of judgment made without any chance or expectation of eliciting acceptance or negotiation do not accomplish the purposes behind the rule."). Marshall argues that Rule 68 offers must be made in "good faith," but we have not adopted a good faith test. *Anderson*, 234 P.3d at 1289.

do not satisfy this requirement.[29]  But small offers may be valid even when they are much lower than the amounts demanded.[30]  Such discrepancies might be justified when the claims have a "tenuous factual basis or controlling legal precedent."[31]  Both the timing and the amount of an offer may bear on its validity.[32]

Peter's offers of judgment complied with Rule 68 because there was an "objectively reasonable prospect" that they might start a dialogue that could lead to settlement.[33]  Though Peter made the offers about one month after Marshall filed her complaint, this was after Marshall moved for summary judgment on liability.  Thus with respect to two major elements, negligence and causation, Marshall claimed that all relevant facts were known and undisputed.[34]  The  record also establishes that Peter

---

[29]     *Anderson*, 234 P.3d at 1289.

[30]     *Compare id.*, 234 P.3d at 1290 ($10 offer invalid when made "shortly after [defendant] filed its answer" and when plaintiff's $500,000 claim arose from "an undisputedly serious head injury caused by a table that belonged to [defendant]"), *and Beal*, 216 P.3d at 1177-78 ($1 offer invalid when made 30 days after litigation began and when "good faith dispute involv[ed] potentially substantial damages"), *with Rude v. Cook Inlet Region, Inc.*, 322 P.3d 853, 859 (Alaska 2014) ($1,500-per-shareholder offer valid despite claims exceeding $200,000 when claims were barred by collateral estoppel and thus were "particularly weak").

[31]     *Anderson*, 234 P.3d at 1289-90.

[32]     *See id.* at 1289 ("[T]here was no objectively reasonable prospect that Anderson would accept ten dollars to settle her case — or that the offer would even start a dialogue that could lead to settlement — at that stage of the litigation."); *Beal*, 216 P.3d at 1178 (given timing and amount of offers, they "could not be considered valid offers of settlement or compromise, or valid attempts to encourage negotiation").

[33]     *Anderson*, 234 P.3d at 1289.

[34]     *See* Alaska R. Civ. P. 56(c) ("[Summary] judgment shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together
(continued...)

reviewed the evidence — including Marshall's medical records and the facts of the accident — before making the offers. And though the offers were substantially lower than Marshall's demands, the evidence suggested that Marshall's demands had a tenuous factual basis. Peter recalled that the collision was minor; he had only tapped Marshall's vehicle and had caused no apparent damage.

Because the offers objectively appeared designed to encourage settlement and avoid protracted litigation, we hold that the offers served the legitimate purpose of Rule 68. Therefore we affirm the attorney's fee award.

## V.    CONCLUSION

We AFFIRM the superior court's denial of the motion for directed verdict and the attorney's fees award under Civil Rule 68.

---

(...continued)
with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").

STOWERS, Chief Justice, concurring.

I respectfully concur in the court's opinion. Most Alaskans with any significant winter driving experience understand that sometimes, notwithstanding the exercise of reasonable care in driving on icy roads, vehicles simply fail to stop as anticipated and low-speed, minimal-damage collisions occur. In such situations, it is the jury's role and responsibility to decide whether the driver of the following vehicle was negligent. I trust the jury to reach a correct result. In this case, the jury plainly did not believe that Peter was negligent, and this court properly affirms its verdict.

I write separately to express my doubt regarding the soundness of cases like those cited in the court's opinion, particularly *Green v. Plutt*[1] and *Grimes v. Haslett*.[2] These cases are conceptually similar to Marshall's case, where following drivers were unable to stop their vehicles in the face of an unexpected, sudden condition and rear-ended the preceding vehicles. Juries found the following drivers not negligent. This court overturned the juries' verdicts, holding that the trial court judges erred in not granting plaintiffs' motions for directed verdicts.

I am skeptical about these outcomes. Though I acknowledge that these cases are precedent, I find it troubling that this court in the past has interjected itself in the role of juries, deciding which sets of facts and highway conditions are sufficient to uphold a jury's verdict and which are insufficient. We should trust and respect the jury's exercise of its collective wisdom in all of these cases; we should only overturn a jury's verdict when the evidence supporting the verdict is so plainly lacking that no reasonable person could conclude the following driver was not negligent.

---

[1] *Green v. Plutt*, 790 P.2d 1347 (Alaska 1990).

[2] *Grimes v. Haslett*, 641 P.2d 813 (Alaska 1982).